**IN THE UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| DEEPAK VARSHNEYA, PH. D, et al. ) | |
| ) | |
| *Plaintiffs,* ) | |
| ) | Civil Action No. 1:20-cv-00272-RDA-JFA |
| v. ) | |
| ) | |
| THE UNITED STATES, et al. ) | |
| ) | |
| *Defendants.* ) | |

**Plaintiffs' Motion for Summary Judgement and Opposition to the Government's Motion to**
**Dismiss and Motion for Summary Judgment**

## TABLE OF CONTENTS

INTRODUCTION.................................................................................................1

PROCEDURAL POSTURE ................................................................................3

STANDARD OF REVIEW ................................................................................7

STATEMENT OF UNDISPUTED MATERIAL FACTS................................8

MATERIAL DISPUTES OF THE GOVERNMENT'S ALLEGED FACTS ...............13

ARGUMENT ....................................................................................................14

    I.   The Government acted contrary to the law by ignoring the express requirements of 48 C.F.R. Ch. 2, H–101 and H-103 (DFARS Appendix H) ......14

        A.  DARPA did not comply with DFARS App. H-101 ................................. 14

        B.  DARPA ignored the express requirements of DFARS H-103 .......................20

  II. The Suspension Notice is Overly Vague in Violation of the FAR and Constitutionally Required Due Process .........................................................25

        A.  Suspension Notice.........................................................................27

        B.  Failure to provide the Record violates Due Process.................................30

  III.   Dr. Varshneya's Patents Cannot Form a Legal Valid Basis for the Suspension .................................................................................31

  IV.   The Suspension Notice Does Not Properly Allege or Factually Support that Immediate Action is Necessary to Protect the Government's Interests ...............................................................33

        A.  DARPA Knowledge of Alleged Appropriation of Intellectual Property .....34

        B.  Dr. Varshneya's Alleged Misstatements to USPTO .................................35

  V.   The Decision has Arbitrarily and Capriciously Varied Over Time ............38

  VI.   Other Arbitrary and Capricious actions by the Government.....................38

        A.  Inconsistent findings of present responsibility  .......................................39

        B.  Suspension is an improper punitive action .............................................39

i

**C.  The Administrative Record Fails to Include any Subject Matter Expertise** .......................................................................**39**

**D.  The Government violated FAR 9.407-4 by issuing an improperly long suspension** ........................................................... 40

**CONCLUSION** .....................................................................................................**40**

## INTRODUCTION

Plaintiffs, Deepak Varshneya ("Dr. Varshneya") and XeroWind, LLC (XeroWind") (collectively "Plaintiffs") challenge of their suspension began nearly a year ago, yet basic questions remain unanswered as to both why the Defendants, the Defense Advanced Research Projects Agency, et al. (the "Government" or "DARPA"), issued the suspension and then steadfastly refused to follow its own codified suspension processes.  These questions include:

- Why did the Government wait more than three years to suspend Plaintiffs even though the Government admits it knew of the three patents and declaration since at least March 2016?

- Why did the Government refuse to provide the entire record for the Suspension and Debarring Official's (SDO) decision as required by DFARS H-101?

- Why did the Government repeatedly refuse to let Plaintiffs present in person information and arguments against the suspension as expressly required by DFARS H-103(a)?

- How can a third party that did not make the decision to suspend Plaintiffs certify what documents formed the basis for the SDO's decision?

- If the Government truly believes that the patents are actually the Government's property why has it taken no action in the last three years to seek return of the Patents from Plaintiffs?

- Why did the Government refuse to address Plaintiffs' 29-page opposition to the suspension and instead only issue an unsupported one page "decision" that did not address a single issue raised by the Plaintiffs?

- How can the SDO possibly review and compare technical patents without any disclosed technical subject matter expertise or without any reliance on a subject matter expert?

In Plaintiffs' view, basic questions like these, and others addressed herein, do not arise in a technically sound suspension.  Indeed, when the Government has an adequate factual and legal basis for a suspension it should be able to easily adhere to the required processes and need not avoid addressing substantive factual and legal issues.  In this case, however, at nearly every turn, the Government has refused to follow its own regulations and any semblance of fundamental due process.  Most recently, this has manifested in the Government's sudden disclosure of more than

1

one hundred pages of documents that, according to the Government, provide justification for the SDO's previously stated rationale for suspending the Plaintiffs.  These documents existed prior to the issuance of the July 3, 2019, suspension notice (the "Suspension Notice") yet were not provided by the Government until now.

Additionally, aside from the numerous procedural defects, it is clear that DARPA has a fundamental misunderstanding of the subject patents (the "Patents")[1] in comparison to DARPA's intellectual property.  The SDO's misunderstanding appears to be based on a failure to either understand and/or review the technical materials at issue.  In fact, the Suspension Notice and related record[2] appear to contain nothing more than a surface level review of the patents.  Even more concerning, neither the Suspension Notice nor the administrative record (AR) indicates any technical subject matter expert or patent specialist was consulted to compare the Patents  with DARPA's intellectual property in the OneShot program ("OneShot Program") or the Clear Shot disclosure ("Clear Shot Disclosure").  This alone seemingly renders the decision arbitrary and capricious.  Moreover, the lack of technical understanding led to astonishingly vague allegations in the Suspension Notice and subsequent one page October 25, 2019, decision to leave the suspension in place.  In the Suspension Notice, the SDO is either unable or unwilling to adequately state any material aspects regarding how the Patents appropriate DARPA's intellectual property. Instead, because the SDO does not rely on any disclosed subject matter experts or personal expertise, the entire suspension appears to be based on the inherently flawed and speculative logic: "if it looks like a duck, it probably is a duck."

---

[1] Hereinafter, the term the "Patents" refers to the patents referenced in the DARPA's July 3, 2019, Suspension Notice, including U.S. Patents 9,127,911 ('911) 9,157,701 ('701), 9,247,742 ('742).  *See* AR 198 - 331. '911, '701, '742

[2] Perhaps the best example of the fundamental flaws in this suspension is DARPA's failure to even include the patents themselves in the suspension record it provided to the Plaintiffs, as required by DFARS App. H-101.  This is especially remarkable as the Patents make up *every aspect* of the foundation for the suspension.

In Plaintiffs' view, the Patents are readily distinguishable from anything Dr. Varshneya worked on at DARPA.  Comparing the two is like comparing a surgeon's scalpel with a dinner knife.  Both are metallic and used to cut, but that is where the similarities end.  Certainly if Dr. Varshneya had been involved in developing a tactical knife at DARPA, DARPA would not suspend him if he later held a patent for a kitchen knife.  Under the Suspension Notice, however, that is exactly what has occurred because the SDO, who does not disclose his background or expertise, has failed to conduct and provide any substantive analysis of the Patents and DARPA's ONE SHOT / Clear Shot Disclosure.

In short, DARPA's failure to follow its own procedures, lack of substantive review, and complete failure to respond to the points raised in Plaintiffs' responsive opposition (the "Opposition") to the suspension, strongly indicates that DARPA did not want to be "confused by the facts" or the law. Particularly facts that did not support the suspension of the Plaintiffs or laws that required it to hear from and/or address Plaintiffs' arguments.  *See e.g.* DFARS H-103(a) (requiring SDO to meet, in person, with contractor to hear arguments and information in opposition to the suspension).  This Memorandum addresses the procedural and factual defects in DARPA's suspension and related record in great detail and affirmatively demonstrates why Plaintiffs are entitled to Summary Judgment.

## PROCEDURAL POSTURE

On July 3, 2019, the SDO sent the Suspension Notice to Plaintiffs.  AR 1 - 7.[3]  The Suspension Notice stated that it was based on two alleged improper actions:

I.   The suspension is based on adequate evidence that you appropriated by unlawful means intellectual property concerning valuable military technology---the ONE SHOT/Clear Shot system—from the US. Government in violation of 18 U.S.C. 641.

---

[3] The remainder of the references to the AR will include the substantive number and omit the place holder zeros.

3

II. This suspension is also based on adequate evidence that you made false statements to the US Patent and Trademark Office concerning title to U.S. Patents 9,127,911 and 9,157,701 in violation of 18 USC 1001.

*Id.* (roman numerals added for clarity).  With respect to the first alleged improper action, the alleged appropriation (the "Appropriation Allegation"), the Suspension Notice alleges Plaintiffs appropriated unspecified "intellectual property" related to the ONE SHOT/Clear Shot Disclosure. *Id.*  The Appropriation Allegation appears to relate to Plaintiff Dr. Varshneya's filing of a patent application for patent number 9,127,911 (the "'911 Patent").  In making the Appropriation Allegation, the Suspension Notice notes that the '911 patent application was filed on December 24, 2013, more than five and a half (5.5) years before the Suspension Notice was sent in July 2019.  AR 1-7.  The Appropriation Allegation also is alleged to apply to continuing in part ("CIPs")[4] Patent Nos. 9,157,701, and 9,247,742 .  These CIPs were sought on August 1, 2014, and March 18, 2015.  These dates preceded the Suspension Notice by almost five years.

 With respect to the second alleged improper action, the alleged false statement ("False Statement Allegation, the Government appears to be relying exclusively on declarations by Dr. Varshneya submitted to the United States Patent and Trademark Office ("USPTO") in August of 2016, in response to an improper assignment of the Patents .  AR 75.  No other activity since 2016 is mentioned in the Suspension Notice or in the July 19, 2019, record that allegedly comprised the basis for the SDO's decision.  AR 1 – 69.

**Plaintiffs' Opposition to the Suspension Notice**

In response to the Suspension Notice and pursuant to FAR 9.407-3, on September 9, 2019,[5] Plaintiffs submitted a twenty-nine (29) page (exclusive of exhibits) written response in

---

[4] A continuing application is a continuation, divisional, or continuation-in-part application filed under the conditions specified in 35 U.S.C. 120, 121, 365(c), or 386(c) and 37 CFR 1.78.
[5] On August 6, 2019, in response to Plaintiffs' request, DARPA granted Plaintiffs an enlargement of time, until September 9, 2019, for submission of their response to the Suspension Notice.

opposition (the "Opposition") to the Suspension Notice.  AR 70 - 180. The Opposition highlighted glaring legal defects with the Suspension Notice as well as DARPA's fundamental misunderstanding of the relevant facts and the technical aspects of the Patents  referenced in the Suspension Notice.  *Id.*  In the Opposition, Plaintiffs went to great lengths and incurred significant expense in an effort to make objectively clear why DARPA's suspension was not legally or factually supported.  In a section-by-section approach, the Opposition recited the applicable legal standards for suspension and explicitly stated why the Suspension Notice failed to meet those standards.  *See* AR 70 - 97.

To that end, from a review of the Suspension Notice, it was apparent to Plaintiffs that DARPA misunderstood both the legal complexities of the suspension process as well as the factual and technical subject matter related to Dr. Varshneya's work at DARPA.  AR 1 - 7.  As a result, Plaintiffs believed that a meeting between the SDO and Plaintiffs could clear up significant portions of DARPA's misunderstandings.  Pursuant to FAR 9.407-3(b)(1), the Opposition expressly requested that the SDO permit Plaintiffs an opportunity to submit, in person, argument and information in opposition to the suspension.  AR 96.

On October 25, 2019, in reply to Plaintiffs' 29-page Opposition, DARPA responded to with a nearly one page letter and that ultimately included one substantive paragraph:

> I reviewed your response to the Suspension Notice regarding the suspension of Dr. Deepak Varshneya and XeroWind, LLC, dated September 9, 2019 ("Opposition Memo").  Pursuant to FAR 9.407-3(d)(4), this letter is my official decision and determination to leave the suspension in place pending the completion of the criminal and civil investigation by the Department of Justice (DOJ) and the Defense Criminal Investigative Service concerning Dr. Varshneya and XeroWind, LLC.

AR 181.  DARPA's October 25th response letter (the "Decision") purporting to be DARPA's "official decision" completely failed to address the legal and factual defects raised by Plaintiffs in the Opposition to the Suspension Notice.  AR 70 - 180.   DARPA also refused Plaintiffs'

request to submit, in person, information and argument in opposition to the suspension, as

expressly allowed under DFARS App. H-103 and FAR 9.407-3.  AR 181.

Shortly thereafter, on November 19, 2019, the Plaintiffs, through counsel, sent a letter to

DARPA that, among other things, stated:

> We are disappointed with your decision not to lift the suspension. What is more concerning, however, is your failure to address the patent legal defects in the Suspension Notice that were discussed in detail in the Opposition. Indeed, your Letter seemingly implies that the Suspension Notice's legal defects are somehow irrelevant because of an ongoing investigation. As you know, regardless of existence of a criminal or civil investigation, suspension proceedings must meet the requirements of the Federal Acquisition Regulation as well as constitutionally required due process… In the Opposition, Respondents[6] raised more than six independent legal and factual defects with the Suspension Notice. Specifically, these defects include…. In conformance with the FAR § 9.407-3 requirement for "fundamental fairness" and related constitutional due process requirements, we respectfully request that DARPA immediately articulate, in writing, a valid legal and/or factual basis for Respondents' suspension.

AR 183 - 184.  On December 16, 2019, DARPA[7] responded with a letter that declined to provide

any further justification and again refused Plaintiffs' request for a meeting.  AR 185.  DARPA's

letter did not substantively address the issues raised in Plaintiffs' prior letter or the Opposition

and again illustrated, in Plaintiffs' view, that DARPA had very fundamental misunderstandings

of both the factual background and, equally concerning, the procedures required for suspension.

Thereafter, the Plaintiffs sent additional correspondence on January 28, 2020,

emphasizing to DARPA the regulatory and due process requirements which require DARPA to

issue a written decision that addresses the Plaintiffs' Opposition to the Suspension Notice.  AR

190-193; FAR § 9.407-3.  Plaintiffs' letter also reiterated to DARPA that DARPA was required

---

[6] In the Opposition submission, Dr. Varshneya and XeroWind are collectively referred to as the "Respondents."
[7] This letter was not sent by the SDO.  Instead it was sent by Contracting Officer Brian D. Nuckols. Although Plaintiffs have addressed in all of their letters to the SDO, the SDO has only responded once (the October 25, 2019, decision).  All other responses have been provided by Mr. Nuckols. With the exception of the February 24, 2020 letter, in Mr. Nuckols's responses he does not indicate if he is responding on behalf of the SDO or that the SDO has even read Plaintiffs' prior correspondence.

by both the FAR and DFARS to allow the Plaintiffs to present, in person, information and argument in opposition to the suspension.  DFARS Appendix-103 H.  In DARPA's replies to these letters, it refused to provide any further justification for its seemingly arbitrary decision. AR 188 and 194.

DARPA also repeatedly denied Plaintiffs' request for an in-person meeting to present information and arguments in opposition to the suspension.  *Id.*  DARPA denied this request because it improperly and mistakenly believed that Plaintiffs' meeting request was equivalent to a fact finding.  AR 195.  Ironically, the SDO has *never* taken the position that any material facts were in dispute.  As a result, DARPA's attempts to construe Plaintiffs' request to present information and arguments to the SDO as a fact finding is nonsensical.

## STANDARD OF REVIEW

"Under Rule 56(c), summary judgment is proper if…there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).  When the parties cross-move for summary judgment, each party bears the burden of demonstrating entitlement to judgment, as well as the absence of issues of material fact. *Id*. When resolving a motion for summary judgment, the court may neither make credibility determinations nor weigh the evidence and seek to determine the truth of the matter. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202.

The Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, "sets forth the standard governing judicial review of decisions made by federal administrative agencies." *See Dickinson v. Zurko*, 527 U.S. 150, 152, 119 S. Ct. 1816, 144 L. Ed. 2d 143 (1999).  Under the APA, a decision in a formal agency action must be set aside if it is found to be "arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). When determining whether there has been a violation of the APA, "a reviewing court may set aside agency action that it finds to be in excess of the agency's statutory jurisdiction or authority; **without observance of procedures required by law**; or 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Smith v. Evans*, No. CIV.A. 2:04CV356, 2005 WL 2454101, at *2 (E.D. Va. Sept. 30, 2005) (emphasis added) (citing *Shanty Town Assocs. Ltd. P'ship v. E.P.A.,* 843 F.2d 782, 789 (4th Cir.1988). Further, it is well established that an "agency is not free to ignore or violate its regulations" and "an agency action may be set aside as arbitrary and capricious if the agency fails to 'comply with its own regulations. *Nat'l Envtl. Dev. Assoc.'s Clean Air Project v. E.P.A.*, 752 F.3d 999, 1009 (D.C. Cir. 2014); *Koshman v. Vilsack*, 865 F.Supp.2d 1083, 1095 (E.D. Cal. 2012) (concluding that the agency's decision is "not in accordance with the law").

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1.      The USPTO granted and issued the '911 patent on September 8, 2015, the '701 patent on October 13, 2015, and the '742 patent on May 24, 2016, to Dr. Varshneya. AR 198, 234, and 276.

2.      In 2014, DARPA was aware of Dr. Varshneya's intent to create a commercially viable laser-based wind measuring system for hunters. AR 74 (DARPA official wished Dr. Varshney well with his efforts to commercialize wind measurement system for recreation hunters).

3.      In April 2014, at Dr. Varshneya's farewell from DARPA, Dr. Steve Walker (then the Deputy Director of DARPA) specifically wished Dr. Varshneya well with his efforts to commercialize a laser based, wind measuring bullet target system for hunters, and asked Dr. Varshneya to "let him know how the commercial venture works out for him." *Id.*

4.     Even prior to DARPA's 2016 unauthorized and unilateral assignment of the Patents to itself, DARPA was aware of their issuance.  AR 74 - 75 and 100.

5.     At no point, prior to the suspension notice, did assert that Dr. Varshneya was in any way precluded from working to develop another laser based, wind measuring bullet target system because of his prior work. AR 75.

6.     To the contrary, when Dr. Varshneya left DARPA he received an ethics advice letter ("Ethics Letter"), in accordance with 5 C.F.R. 2635.107, regarding post governmental work restrictions. AR 13, January 7, 2014, Ethics Letter.  Nothing in the Ethics Letter stated Dr. Varshneya was any way precluded from working to develop other rifle-based laser wind measuring systems. AR 13.

7.     On March 22 and 23, 2016, Dr. Varshneya reached out to Mr. Crane Lopes, DARPA's General Counsel, via three emails, to reiterate that he had received Patents (identified by number in the email) related to the unique process for the targeting system he had developed for a lower cost (and less powerful) system to account for wind and adjust a bullet's hit point. AR 74 - 75.

8.     Mr. Lopes responded that he understood and stated, "Perhaps you can come back to DARPA. Your One Shot Program was remarkable." AR 75.

9.     At no point in Dr. Varshneya's discussions with Mr. Lopes, either prior to leaving DARPA or after, did Mr. Lopes suggest that DARPA somehow had exclusive rights on all laser wind measuring systems. AR 75.

10.    In 2016, DARPA filed with the USPTO a unilateral assignment of  the '911 and '701 Patents to the Government AR 102 - 138.  Dr. Varshneya was notified of and did not approved of the unilateral assignment. AR 75.

11.     Dr. Varshneya took the necessary steps to correct DARPA's improper unilateral assignment and return the Patents to his name—as they were before the proper assignment. AR 51-66 and 75-76. The patents have remained assigned to Dr. Varshneya since the re-assignment in 2016.

12.     Even to date, nothing in the documents provided by the Government in its AR filing indicates that DARPA or any other government entity has taken any action at the USPTO  or in any court to challenge ownership of the patents to have them reassigned to the Government. See AR generally.

13.     In December 2014, DARPA transferred the ONE SHOT program to the US Army. AR 402

14.     Thereafter in 2016, because of Dr. Varshneya's direct expertise in wind measurement designs and related vast experience with path integrated laser wind measurement systems, XeroWind sought and received contracts to help the Army further develop the wind measurement technology. AR 76 – 77 and 332 – 393.

15.     The Army affirmatively provided DARPA's One Shot Program operating system source code directly to XeroWind so that XeroWind could undertake contract performance. AR 77.

16.     The first contract was a firm fixed price ("FFP") contract for a "Path Integrated Wind Sensing Demonstrator" for snipers that was entered into on August 8, 2016 (Contract No. W909MY16C0004, the "RIF Contract").  AR 332 - 357.

17.     The second XeroWind FFP contract was also with the Army and called for development of a "Wind Sensing and Ranging System (WISER) for Crew Served Weapons" (Contract No. W911NF-17-C-0047, the "WISER Contract"). The WISER Contract was entered into on June 9, 2017. AR 358 - 393.

18.     XeroWind satisfactorily performed under both Army contracts.

19.     On July 9, 2019, XeroWind receive notification from DARPA that it had been suspended from contracting with the United States government. On July 15, 2019, Dr. Varshneya requested that DARPA provide "all notes, correspondence, and documents of any type that were submitted to DARPA or any individual related to the recent finding of a suspension against Dr. Varshneya and XeroWind LLC." AR 8.

20.     On July 18, 2019, Plaintiffs, through counsel, requested that DARPA provide pursuant to DFARS Appendix H-101: "A copy of the record which formed the basis for the decision by the debarring and suspending official will be made available to the contractor."

21.     On July 19, 2019, DARPA provided the record related to the SDO's decision to suspend the Plaintiffs. With the record, DARPA sent a letter that stated: "pursuant to "DFARS H-101" DARPA  was providing the record that formed the basis for the SDO's decision (the "July 2019 Record") to suspend the Plaintiffs.  AR 8 - 9.

22.     The July 19, 2019, letter that accompanied the July 2019 Record was sent by Brian Nuckols ("Mr. Nuckols") who was not then and is not now the DARPA SDO. AR 9.

23.     The letter that accompanied the July 2019 Record was not signed by the SDO. AR 9.

24.     The letter that accompanied the July 2019 Record was signed by David W. Bennet, Jr. ("David Bennet") who was not then and is not now the DARPA SDO. AR 9.

25.     No document in the July 2019 Record identifies David Bennet's title or position, or his factual knowledge of the documents that "formed the basis for the decision" to suspend Plaintiffs. See AR generally.

26.     The July 2019 Record did not include all of the documents that the SDO reviewed. AR 198 - 427; Dkt. 20, p. 16, (Government Brief stating the previously undisclosed "full" record support the SDO).

27.     The July 2019 Record did not include Patents  ('911, '701, '742) nor any other patents.

28.     The July 2019 Record did not contain any of XeroWind's government contracts.

29.     The July 2019 Record did not include any of the documents from AR 198 to 427.

30.     The SDO has not provided any certification related to the documents that "formed the basis for the decision" to suspend the Plaintiffs.

31.     The July 2019 Record omitted documents that were in existence and reviewed by the SDO prior to the issuance of the Suspension Notice. AR 3, 91, 100 – 101, 181, 195, and 414 - 415.

32.     The July 2019 Record omitted documents that the SDO reviewed immediately before his decision to suspended the Plaintiffs.  AR 198 – 407; AR 195.

33.     Neither the July 2019 Record nor the administrative record contains the Patent prosecution histories of the Patents.

34.     The Suspension Notice expressly acknowledges the SDO reviewed the patent prosecution histories in making his decision to suspend. AR 2.  The patent prosecution histories, however, were not included in the July 2019 record or the administrative record provided in this case.

35.     The subject Patents use different processes than the One Shot program / Clear Shot disclosure. AR 92 - 94.

36.     Publicly available papers that detail laser wind measurement concepts and mathematical formulae have been in the public domain since at least 1972.  AR 144 - 167.

37.     DARPA does not have a property right or intellectual property interest in the entire field of Laser wind Measurement or path integrated laser wind measurement technology.

38.     The July 2019 Record did not contain any document that described the specific proprietary aspects of the ONE SHOT Program.

39.     Aside from the rudimentary Clear Shot Disclosure itself, which was neither a patent nor other legal document, the July 2019 Record did not contain any document that described the specific proprietary aspects of the Clear Shot Disclosure. AR 22 – 37 and see AR generally.

40.     Plaintiffs made repeated requests to present information and arguments in opposition to the suspension pursuant to DFARS H-103(a). AR 96, 184, and 186.

41.     At no point did DARPA permit the Plaintiffs to present in person information and argument in opposition to the Suspension. AR 185, 188, and 194.

### MATERIAL DISPUTES OF THE GOVERNMENT'S ALLEGED FACTS

1.  In paragraph five of the statement of alleged undisputed material facts, the Government states:

> The '911, '701, and '742 patents each explicitly recite all of the essential elements of both the DARPA ONE SHOT system and Dr. Varshneya's CLEAR SHOT disclosure….

Plaintiffs do not agree that the Patents "recite all the essential elements" of the DARPA ONE SHOT system and Dr. Varshneya's Clear Shot Disclosure. First, nowhere in the Suspension Notice or administrative record does the SDO concluded that the Patents contain the "essential elements" of the One Shot or Clear Shot Disclosure.  This is precisely the problem.  If the Suspension Notice, or any analysis in the record had made this point and supported it with citations, Plaintiffs could have submitted a substantive response to addresses those allegations. Instead, the entire analysis, as recited set out in the Suspension Notice consists of a conclusory statement -  "DARPA's review of these patents further indicates that they each *disclose* the Clear Shot invention and *cover* the ONE SHOT" (emphasis added). There is no explanation of why DARPA has concluded that the patents disclose or cover ONE SHOT or Clear Shot Disclosure. As a result, paragraph number five of the Government's alleged facts is clearly in dispute.

2.  In paragraph 17 of the statement of alleged undisputed material facts, the Government states:

> Plaintiffs did not identify any document that the SDO did not consider that he should have considered….

This statement is flatly contradicted by Plaintiffs' Opposition to the suspension.  In conjunction with Plaintiffs opposition, Plaintiffs submitted nearly a half dozen documents that the SDO had not considered, including emails to DARPA where Dr. Varshney specifically identified the Patents, Dr. Varshneya post-employment ethics letter, and publicly available technical papers that described the mathematical formulae for laser wind measurement.  AR 70 - 181.

## ARGUMENT

I.      **The Government acted contrary to the law by ignoring the express requirements of 48 C.F.R. Ch. 2, H–101 and H-103 (DFARS Appendix H)**

There is no dispute that 48 C.F.R. Chapter 2, Appendix H ("DFARS App. H" or "DFARS H") is legally binding on the SDO and, in turn DARPA, for suspension and debarment matters. The opening paragraph of DFARS App. H expressly makes this point: "This appendix provides uniform debarment and suspension procedures **to be followed by all debarring and suspending officials**." DFARS App. H-100. (emphasis added).   Even the Suspension Notice sent by the SDO explicitly mentioned that the process would be in accordance would DFARS App. H and enclosed a copy with the Suspension Notice to Plaintiffs.  AR 4 and 6 - 7 ("A copy of Appendix H is enclosed."). Despite this acknowledgment, DARPA chose to ignore two separate and straightforward regulatory requirements contained therein.

**A.  DARPA did not comply with DFARS App. H-101.**

DFARS H-101 states that:

> Contractors will be notified of the proposed debarment or suspension in accordance with FAR 9.406-3 or 9.407-3.  A copy of the record which formed the basis for the decision by the debarring and suspending official **will be made available to the contractor**.  If there is a reason to withhold from the contractor any portion of the record, the contractor **will be informed of what is withheld and the reasons for such withholding**.

(emphasis added).  It is well established that the word "will" signifies mandatory, nondiscretionary action.  *See U.S. v. UPS Customhouse Brokerage, Inc.,* 575 F.3d 1376 (Fed.Cir.2009) (the word "will" is a mandatory term); *Rodi v. Ventetuolo,* 941 F.2d 22 (1st Cir.1991) (identifying "will" as an "unmistakably mandatory term").  As a result, the language of DFARS H-101 requires two separate and nondiscretionary acts at the time a Suspension Notice is issued: 1) affirmatively providing the contractor all documents on which the SDO's decision was based and 2) affirmatively notifying the contractor if any documents were withheld from the record.

In *Hickey v. Chadick*, No. 2:08-CV-0824, 2010 WL 11484581, at *16 (S.D. Ohio Aug. 5, 2010) the court found that the record required by DFARS H-101 is fixed at the time the suspension notice is issued, but the agency is not required to supplement the record with all documents created thereafter.  *Hickey* (stating that H-101 requires "contractors be notified of "the *proposed* debarment or suspension" and "a copy of the record which formed the basis for the decision" be made available.") (*citing* 48 C.F.R. Ch. 2, App. H–101).  The court reasoned that the record is fixed at the time the suspension notice is issued because any document created *after* the notice was issued could not possibly "form the basis" for the SDO's earlier decision. *Id.*

In this case, the Government failed to provide over 100 pages of documents that existed and were reviewed by the SDO *before* the July 3, 2019, Suspension Notice was issued.  *See* AR 198 - 427.  Indeed, one of the documents the Government failed to provide, the ONE SHOT Program Completion memorandum, appears to pre-date the suspension by almost five years.  AR 394 - 406.  Other documents that appear central to the decision were also secretly withheld.  In fact, the Government withheld a 2019 letter from DARPA to Cubic Defense Applications Corporation ("Cubic") that directly discusses the Patents and Dr. Varshneya.  The letter mentions the Patents and Dr. Varshneya by name nearly a dozen times and the Government's Brief admits this letter was reviewed by the SDO

15

prior to the suspension decision, yet the letter was not provided with the July 2019 Record. Dkt., 20, Gov. Brief, p. 17. The Government also failed to disclose with the DFARS H-101 record that it was relying on recent printouts from XeroWind's website. AR 407 – 414. These documents also were hidden from the July 2019 Record, thereby precluding Plaintiffs from addressing the Government's technical misunderstanding and misreading of the screenshots.[8]

Failing to provide these documents plainly prejudice Plaintiffs' response in Opposition to the Suspension. Indeed, the very purpose of providing the record is to afford the Plaintiffs a meaningful opportunity to respond. *Transco Sec., Inc. of Ohio v. Freeman*, 639 F.2d 318, 324 (6th Cir. 1981) ("due process in this case required notice sufficiently specific to enable appellants to marshal evidence in their behalf so as to make the subsequent opportunity for an administrative hearing a meaningful one."). Under DFARS H-101 and the standard outlined in *Hickey,* the Government was required to provide *all of* these documents when it provided the July 2019 Record or, alternatively, affirmatively notify Plaintiffs that documents were being withheld. The Government did neither and thus violated DFARS H-101.

<u>The Government's Response to Alleged H-101 Violation</u>

In its May 26, 2020, Memorandum in Support of its Motion to Dismiss and Motion for Summary Judgment (the "Government's Brief"), the Government argues that it did not violate DFARS H-101 because the undisclosed documents purportedly did not form the basis for the decision to suspend the Plaintiffs. Dkt 20, p. 28. This is a hollow legal argument made in an effort to justify a failure to produce documents that were central to the SDO's suspension decision. From both a legal and factual perspective, there are glaring defects with this argument.

---

[8] The Government also provided the screenshots without any context for why they were taken or how they were communicated to the SDO. This further indicates that additional documents that should have been included in the DFARS H-101 record likely exist that have not been produced by the Government.

1. Legal Defect

   a. The SDO does not identify what documents formed the basis for his  decision to suspend.

There is no certification (or statement of any kind) in the record provided by DARPA as to what documents "formed the basis" for the SDO's decision to suspend the Plaintiffs.  The July 2019 Record was only accompanied by a letter from Mr. Nuckols (the "Nuckols Letter"), who was not the SDO in this matter, that was signed by an unknown third party, David Bennett.[9]  AR 8 - 9.  In the Nuckols Letter, Mr. Nuckols states that:

> Consistent with Defense Federal Acquisition Regulation Supplement (DARS) Appendix H- 101 , "Debarment and Suspension Procedures," DARPA herein encloses a CD-ROM containing the documents listed below that **formed the basis for DARPA's decision** to suspend you and XeroWind.

AR 8 (emphasis added).

First, DFARS H-101 requires the documents that formed the basis for the **SDO's** decision.  Neither DFARS H-101 nor the FAR permit DARPA as a whole to collectively make the decision to suspend the Plaintiffs.  *See* FAR 9.407-2 ("The **suspending official** may suspend a contractor suspected, upon adequate evidence"); FAR 9.403 ("*Suspending official* means– (1) An agency head; or    (2) A designee authorized by the agency head to impose debarment.").  That authority is limited exclusively to the SDO.  *Id.* The Nuckols Letter's failure to differentiate between DARPA as a whole  and the individual SDO is legally significant because only the SDO possesses the power to issue a suspension and, in turn, only the SDO

---

[9] To put this is a litigation context, this is seemingly akin to a secretary signing a letter on behalf of a law clerk who is certifying on behalf of a judge what the judge relied on in reaching his opinion.

possesses the knowledge as to what documents he relied upon to "form the basis" for his decision to suspend the Plaintiffs.[10]  *See* FAR 9.407-2; DFARS App. H-101.

Moreover, even if the Nuckols Letter mistakenly or just in artfully referred to DARPA as a whole and, in fact, meant the SDO, it is still essentially[11] impossible for Mr. Nuckols, who is not the SDO, to state what documents formed the "basis for the decision" by the SDO to suspend the Plaintiffs.  As a result, there is nothing in the July 2019 Record which establishes or any way indicates that, at the time the SDO provided the Suspension Notice and July 2019 Record, any documents were withheld..[12]   Thus, even under the Government's argument that the term "record" in DFARS H-101 only includes a subset of documents, it was still required to notify Plaintiffs if any documents from the overall record (all documents reviewed by the SDO) were withheld.[13]   DARPA did not provide any notification that documents had been withheld. *See Allenwood Federal Correctional Inst*., 218 F.3d 250, 258 (3d Cir.2000) ("An agency abuses its discretion if it fails to follow its own regulations and procedures."); *see also Wagner v. U.S*., 365 F.3d 1358, 1361 (Fed.Cir.2004) (agency bound by its own regulations).

---

[10] If the power to suspend and related knowledge for the basis of the suspension were imputed or designated to the DARPA as a collective, the decision to suspend a party (and knowledge of documents that formed the basis for that decision) would evade review as there would be no individual point of contact to question.

[11] One potential exception to this is if the agency provided *all* documents reviewed by the SDO.  If the entire universe of documents were provided by the agency, the documents that formed the basis for the decision to suspend would, by definition, have been included therein.  As we know from the Government's recent disclosure, however, that is not what occurred in this case as many documents were not disclosed with the Suspension Notice.

[12] A close review of the Government's July 2019 Record  indicates that it was far from complete.  The July 2019 Record included documents from years ago and nothing more recent than 2016.  Yet the Government's so-called full administrative record included documents directly related to Plaintiffs that were created just months before the suspension.  It would be illogical and arbitrary for the SDO to ignore the newer documents and completely rely on documents from years ago to issue a suspension.

[13] To be clear, in this case, Plaintiffs dispute that there is any actual distinction between the administrative record and the record that formed the basis for the SDO's decision to suspend.  Indeed, how would this process be equitable and meet due process requirements?  Under this logic, the SDO can outwardly state he or she only relied on documents A, B, and C and then only provide those documents to the suspended party.  Thereafter, however, once the suspended party challenges the action in court, the SDO (or his lawyers) can provide other documents that justify an action that would have been otherwise arbitrary under documents provided to the contractor.  This moves the goal posts and would permit an agency to justify arbitrary decisions with post-hac rationale.

b.   Notification as to *any portion of the record* that is withheld

Furthermore, even under the Government's forced reading of DFARS H-101, the Government was still required to affirmatively notify the contractor if *any portion of the record was withheld*.  Notably, under the Government's interpretation, the second sentence contains, a restrictive clause intended to only apply to a subset of documents: the record on which "formed the basis for the decision." *Id.;* Dkt. 28.  The following sentence, however, does not contain the restrictive clause and therefore must refer to the entirety of the record:  "If there is a reason to withhold from the contractor **any portion of the record**, the contractor **will be informed of what is withheld and the reasons for such withholding**." (emphasis added).  Thus, even under the Government's reading of the DFARS H-101, it was required to notify Plaintiffs if *any* documents from the overall record were withheld.  As is now clear from the Government's disclosure of the actual record in this case, it withheld documents that existed at the time it produced the July 2019 Record and did not notify Plaintiffs that those documents had been withheld.  As a result, the Government has violated DFARS H-101 even under its distorted interpretation of the regulation.

2.   Factual Defect

On July 19, 2019, Mr. Nuckols sent a letter that stated "Consistent with [DFARS] Appendix H- 101…. DARPA herein encloses….. the documents listed below that **formed the basis for DARPA's decision** to suspend you and XeroWind." (emphasis added).  Mr. Nuckols statement in this letter, however, is belied by a subsequent letter from Mr. Nuckols himself.  In response to Plaintiffs' January 28, 2020 letter that again directly pointed out the fundamental legal and factual flaws in the suspension, Mr. Nuckols stated that:

> DARPA has consistently maintained that its suspension decision is based on both the evidence of impropriety regarding government intellectual property and **government contracts**

AR 0195. This statement makes clear that DARPA failed to provide the full record that formed

the basis for the SDO's decision on July 19, 2020. That July 2019 Record consisted of eight

documents not one of which related to XeroWind's government contracts or any other

government contract. When the alleged "full" administrative record was revealed by the

Government with its brief in this litigation, it contained a copy of XeroWind's contracts. AR 332

- 393. Mr. Nuckols statement that the "Suspension decision i**s based on** both the evidence of

impropriety regarding…..**government contracts"** reveals that documents that "formed the

**basis**" (emphasis added) for the suspension were not provided in July Record 2019 – in direct

contradiction to what he stated in his July 19, 2019, letter. *Compare* AR 8 and AR 195.[14] As a

result of this violation, DARPA acted in a way that was arbitrary, capricious, and contrary to its

own regulations. Thus, the suspension must be lifted.

### B. DARPA ignored the express requirements of DFARS H-103

Under DFARS H-103, the requirements for the presentation of matters in opposition include:

> (a) In accordance with FAR 9.406-3(c) and 9.407-3(c), matters in opposition may
> be presented **in person, in writing, or through a representative. Matters in
> opposition may be presented through any combination of the foregoing
> methods…**

(emphasis added). On September 9, 2019, Plaintiffs submitted their Opposition to the

Suspension Notice that was issued by DARPA on July 3, 2019. The Opposition was

properly submitted pursuant to FAR 9.407-3(c) (which grants Plaintiffs the right to submit

"information and argument in opposition to the suspension") and DFARS Appendix H,

---

[14] Even DARPA's Suspension Notice itself reveals that documents were reviewed and relied upon, but not provided as part of the record. On page two of the Suspension Notice, DARPA states that "DARPA's review of the prosecution histories of [the Patents]…." AR 2. The prosecution histories of the Patents were not included as part of the July 2019 Record and are not even included with the additional documents now filed with the Government's Brief. Again, this plainly indicates that DARPA has violated DFARS H-101 by reviewing and relying on information that it failed to provide to the Plaintiffs with the July 2019 Record.

Rule H-103(a) (which grants Dr. Varshneya the right to submit his Opposition in "any combination" of the methods of "in person, in writing, or through a representative"). In the response and in subsequent correspondence with DARPA, Plaintiffs repeatedly requested to in person information and argument in opposition to the suspension. *See e.g.* AR 184 and 186. DARPA denied these requests and refused to meet with Plaintiffs.

Thereafter, Plaintiffs repeatedly requested an "in person" meeting to present information and argument in opposition to the suspensions, provide evidence of Plaintiffs' present responsibility to contract with the Government, and answer any questions DARPA may have regarding the Opposition. AR 184 and 186. Throughout this process, DARPA has steadfastly refused to meet with Dr. Varshneya or his legal counsel. DARPA purportedly based its refusal to meet on the alleged grounds that the Plaintiffs' meeting request to present information and arguments in opposition to the suspension were not proper because they were: 1) a request for "additional proceedings to determine disputed material facts," (AR 194) or 2) a request for a meeting to resolve the matter pursuant to an "Administrative Agreement" (AR 181). This is simply a misreading or misunderstanding of the required process. As DFARS Appendix H, Rule H-102 clearly explains:

> There are **two distinct proceedings** which may be involved in the suspension or debarment process. <u>The first</u> is the presentation of matters in opposition to the suspension or proposed debarment by the contractor. **The second** is fact-finding [additional proceedings to determine disputed material facts] which occurs only in cases in which the contractor's presentation of matters in opposition raises a genuine dispute over one or more material facts.

From the correspondence between the Plaintiff and DARPA, it appears that DARPA has confused or conflated Plaintiffs' request for an in-person meeting to present their matters in opposition (the first proceeding type), with a request for a fact-finding hearing (the second

proceeding type). DFARS 102–103.  DARPA persists in its misunderstanding even though Plaintiffs' counsel has repeatedly emphasized that:

> DARPA misunderstands Respondents' request for a meeting.  Respondents did not request a fact finding.  Respondents are only insisting that the Government comply with the basic requirements of FAR 9.407-3(b)(1).  FAR 9.407-3(b)(1) defines the procedures all agencies must follow after issuing a suspension.  Specifically, the regulation states.  **These procedures shall afford the contractor.... an opportunity, following the imposition of suspension, to submit, in person.... information and argument in opposition to the suspension.**

AR 186.  Neither FAR 9.407-3(b)(1) nor DFARS H-103, which describes the "Presentation of matters in opposition," identify any restrictions that may bar such a meeting or presentation.  Moreover, preventing Plaintiffs from presenting in-person information and arguments in opposition to the suspension, directly impacted and prejudice the Plaintiffs ability to respond in opposition to the Suspension.  From a general perspective, a meeting allows the contractor to address the Government's factual and legal errors, perceived concerns, as well as potential mitigations for those concerns.  Indeed, the record is clear as to the value Plaintiffs believed a meeting with the SDO would have to resolve the matter.  Plaintiffs *repeatedly* requested a meeting and even directly pointed out DARPA's regulatory obligation, under H-103 and FAR 9.407-3(c), to provide a meeting for Plaintiffs to submit information and argument against the suspension. *See e.g.* AR 184 (third meeting request); 186-187 (fourth meeting request).

A meeting would have permitted Plaintiffs to directly address DARPA's factual misunderstandings as well as the suspension's legal defects.  Moreover, from a technical knowledge and factual perspective it is essentially self-evident the value of allowing Dr. Varshneya to directly address DARPA's misunderstandings of the technical subject matter and misconceptions of the patents.  Given the facts at issue in this case, Dr. Varshneya is likely the

person most qualified in the world to address both the technical misunderstandings and factual misconceptions.  He is a world class expert on laser wind measurement technology. AR 71-72. More importantly his specific knowledge of the OneShot Program, ClearShot disclosure and unique Patents would be highly relevant given the allegations in the suspension.  *Id.*

In short, providing the required in person meeting was an essential element of the suspension process.  DARPA has no legal right under FAR 9.407-3(b)(1) or DFARS H-103 to deny Plaintiffs' an opportunity to present information and argument, in person, to the SDO. Stated otherwise, neither the SDO nor DARPA have any legal right under FAR 9.407-3(b)(1) or DFARS H-103 to deny Plaintiffs' their right to an opportunity to present information and argument, in person, to the SDO.  *See Nat'l Envtl. Dev. Assoc.'s Clean Air Project v. E.P.A.*, 752 F.3d 999, 1009 (D.C. Cir. 2014) (holding that an "agency is not free to ignore or violate its regulations" and "an agency action may be set aside as arbitrary and capricious if the agency fails to 'comply with its own regulations'").  Accordingly, DARPA has violated FAR 9.407-3(b)(1) and DFARS Appendix H-103, by failing to provide Plaintiffs an opportunity to present information and arguments in opposition to the suspension.

<u>Government's Response to Alleged DFARS H-103(a) violation</u>

What the Government's response to H-103(a) does not state is much more informative than what it does.  In response to the alleged violation of H-103(a), the Government states that

> Plaintiffs assert that DARPA was required to meet with Plaintiffs in person after receiving and reviewing their written submission. That is not the law. Section 9.407-3(b)(1) provides that agencies must "afford the contractor . . . an opportunity, following the imposition of suspension, to submit, *in person, in writing, or through a representative*, information and argument in opposition to the suspension." 48 C.F.R. § 9.407-3(b)(1) (emphasis added). Section 9.407-3(c)(5) likewise requires agencies to provide notice to suspended contractors that "the contractor may submit, *in person, in writing, or through a representative*, information and argument in opposition to the suspension . . . ." 48 C.F.R. § 9.407-3(c)(5). The disjunctive "or" provides

23

the agency with the option of receiving the submission in writing rather than in person.[15]

The Government omits, however, any mention of DFARS H-103, which makes clear that Plaintiffs are entitled to submit matters in opposition "in person, in writing, or through a representative. **Matters in opposition may be presented through any combination of the foregoing methods**." As stated above, the Plaintiffs *repeatedly* requested a meeting to present, in person, information and arguments to the SDO. AR 96, 184, 186, and 194. Plaintiffs even directly cited the DFARS App. H after it was clear that the Government either misunderstood or was misconstruing the process as a fact finding. AR 90. Despite, these repeated requests the Government never permitted the required in person meeting.

The Government also argued that it still potentially complied with minimum due process requirements even by denying the required meeting. Dkt. 20 ("it is well-settled that due process is satisfied where agencies afford contractors the opportunity to make arguments in opposition to a suspension or debarment in writing"). This is a red herring intended to shift focus away from the regulatory violation. H-103(a) expressly permitted Plaintiffs the right to a meeting, which DARPA refused to provide. If the agency created a regulation that provided for something greater than minimum due process, the agency must follow its regulation. *Morton v. Ruiz*, 415 U.S. 199, 235, 94 S. Ct. 1055, 1074, 39 L. Ed. 2d 270 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures. This is so even where the internal procedures are possibly more rigorous than otherwise would be required."). As a result, the SDO's failure to meet in-person with Plaintiffs as provided for under DFARS H-103a,

---

[15] Even this reading of the regulation is quite clearly nonsensical. According to the Government's logic, statement is truly disjunctive, if a party submitted information through an authorized representative the party could not submit anything in writing or in person. This preclude any actual submission by the authorized representative on behalf of the contractor.

violated the plain text of the regulation. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004) ("[i]t is an elemental principle of administrative law that agencies are bound to follow their own regulations."). As a result, given that it is undisputed that the Government declined to allow Plaintiffs an in person meeting and that the plain language of H-103 permitted Plaintiffs to present information and argument in opposition to their suspension as a matter of right, the Government has violated the express provisions DFARS H-103 and, as a result, DARPA's actions are arbitrary, capricious, and contrary to the law.

## II.   The Suspension Notice is Overly Vague in Violation of the FAR and Constitutionally Required Due Process

In suspension matters, fundamental fairness requires that the contractor be given specific notice of the charges against him, and in the usual case, an opportunity to respond to those charges. *See Home Brothers, Inc. v. Laird*, 463 F.2d 1268, 1271 (D.C. Cir. 1972). In *Home Brothers, Inc.*, the D.C. Circuit Court has specifically found:

> we think an action that "suspends" a contractor and contemplates that he may dangle in suspension for a period of one year or more, is such as to require the Government to insure fundamental fairness to the contractor whose economic life may depend on his ability to bid on government contracts. That fairness requires that the bidder be given specific notice as to at least some charges alleged against him, and be given, in the usual case, an opportunity to rebut those charges.

*Id.* The Fifth Amendment to the U.S. Constitution states, "No person shall be ... deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V. The Due Process Clause of the Fifth Amendment "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg,* 521 U.S. 702, 720, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997).

Furthermore, of particular relevance here, courts have specifically found that Government contractors have a "liberty interest at stake, where the suspension is based on charges of fraud

and dishonesty". *ATL, Inc. v. US,* 736 F.2d 677, 683 (Fed. Cir. 1984).  The D.C. Circuit Court

has gone as far as to say that "there is no real dispute [that there is] a liberty interest in avoiding

the damage to [] reputation and business caused by a stigmatizing suspension." *Reeve Aleutian*

*Airways, Inc. v. United States,* 982 F.2d 594, 598.  Likewise, other federal courts have made

clear that "where governmental blacklisting is involved, a [constitutional] 'liberty interest' of the

plaintiff is at stake." *Peter Kiewit Sons' v. US. Army,* 534 F. Supp. 1139, 1153 (D.D.C. 1982).

In addition, with respect to related regulatory requirements, under FAR § 9.407-3(c),

when suspending a contractor, the Government is required to immediately advise the contractor

that the SDO has determined, by adequate evidence, that the contractor committed "irregularities

of a serious nature in business dealings with the Government or seriously reflecting on the

propriety of further Government dealings with the contractor." *Id.* (roman numerals removed).

After this determination is made, FAR § 9-407-3 states that, in the suspension notice, the

Government "*shall*" describe the irregularities in terms "sufficient to place the contractor on

notice."[16] *Id.* Reviewing courts have upheld this requirement and specifically admonished that in

rendering a suspension or debarment decision the Government may not "hide behind the cloak of

conclusory terms." *Art-Metal-USA, Inc. v. Solomon*, 473 F. Supp. 1, 6 (D.D.C. 1978).

---

[16] When a case involves parallel investigations, FAR 9.407-3 recognizes that the Government is not required to disclose all of its evidence.  Nevertheless, courts have found that the government must still meet the minimum requirements of the FAR and constitutionally required due process.  *See Lion Raisins, Inc. v. United States*, 51 Fed. Cl. 238, 248 (2001) ("[w]hile certainly the Government's interest in protecting an ongoing criminal investigation is great, this cannot extend to obdurate uncooperativeness where the suspended contractor's interest likewise is great."); *ATL,* 736 F.2d at 685; *cf. Perkin–Elmer Corp. v. United States,* 47 Fed.Cl. 672, 676 (2000) (finding that the Government's civil investigation did not justify delay between issuing an investigative report and the Government's decision to revoke acceptance of contract when defendant presented no other evidence explaining delay).

### A.  Suspension Notice

In this case, the Suspension Notice violates the plain language of the FAR and, more importantly, does not pass constitutional muster.  In the Suspension Notice, the Government alleges that Dr. Varshneya "appropriated by unlawful means intellectual property concerning valuable military technology." AR 1. By hiding behind the conclusory term phrase of "intellectual property," the Suspension Notice fails to state with any degree of specificity what Dr. Varshneya is accused of appropriating. *Id.*  In fact, from the Suspension Notice, it appears that DARPA is not exactly certain what intellectual property it is accusing Plaintiffs of appropriating.  On page one of the Suspension Notice, the Government asserts that the suspension is based on adequate evidence that Dr. Varshneya "appropriated by unlawful means intellectual property concerning valuable military technology—the **ONE SHOT/Clear Shot system**—from the US Government…" AR 1. On page four, however, the Suspension Notice states:

> Based on the evidence presented to me, I have determined that you have willfully and without authorization taken title and all rights to the **Clear Shot system** for your own gain, and that you have therefore misappropriated the U.S. Government's rightful title to the Clear Shot Technology.

*Id.* (emphasis added).   Notably absent from this determination on page four is any mention of the ONE SHOT system, which Dr. Varshneya was accused of appropriating on page one of the Suspension Notice.  *See Horne Brothers*, 463 F.2d at 1271.  (in order to suspend a party, there must be the adequate evidence "must be more than uncorroborated suspicion or accusation.").

Additionally, the vagueness and absence of any technical conclusions, much less technical analysis, as to how the Patents infringe on DARPA's intellectual property renders the administrative process an exercise in speculation for the Plaintiffs.  *Transco Sec., Inc. of Ohio v. Freeman*, 639 F.2d 318, 324 (6th Cir. 1981) ("We believe that as in Horne Brothers and Old

27

Dominion, due process in this case required notice sufficiently specific to enable appellants to marshal evidence in their behalf so as to make the subsequent opportunity for an administrative hearing a meaningful one.").  This is especially true when paired with the fact that DARPA failed to disclose the entire record reviewed by the SDO at the time the suspension was issued. Certainly, a contractor cannot be expected to submit a meaningful response to documents that it does not know exist or were undisclosed.  *Id.*

Furthermore, the onus is not on Dr. Varshneya to speculate as to what "intellectual property" he is accused of misappropriating from the Government.  Indeed, based on the July 2019 Record, given the lack of details and foundational documents to establish how DARPA believes the Patents infringe on either the ONESHOT Program or the Clear Shot Disclosure, there is no basis to identify or much less dispute any conclusions. Instead, the FAR, constitutional due process requirements, and fundamental fairness all require that the Government adequately state the irregularities of which the contractor is accused - in this case what Dr. Varshneya is actually accused of appropriating.[17]  FAR § 9.407–3; *ATL*, 736 F.2d at 683. Having acted without even identifying what was allegedly misappropriated, the Government arbitrarily and capriciously suspended Plaintiffs from contracting with the U.S., thereby violating Plaintiffs' liberty interests.  Thus, the suspension must be immediately lifted.

<u>Government's Response</u>

In Government's Brief, the Government states that:

---

[17] It is also worth noting that Plaintiffs have not been permitted to have a fact finding related to factual disputes in the Suspension Notice.  *See* AR 186-187; AR 190-193. In certain limited circumstances, the Government may deny fact finding in certain circumstances, however, when it does so, the specified of the notice is of even greater importance. This point was specifically raised and agreed with in *ATL, Inc.* 736 F.2d at 683.  There the Court noted that stated: "where an agency may deny the contractor an adversary hearing and allow instead mere submission of information in opposition to the suspension, then the need for a more specific notice is especially critical."

Section 9.407-2(3) identifies "theft" and "false statements" as grounds on which an agency can suspend a contractor. The SDO stated that the suspension was based on "adequate evidence" that Plaintiffs "appropriated by unlawful means intellectual property concerning valuable military technology . . . in violation of 18 U.S.C. § 641" and "made false statements . . . in violation of 18 U.S.C. § 1001." AR 1.

To be clear, this is the first time the Government has outwardly stated that the allegations are based exclusively on theft and false statements and not related to general present responsibility concerns under FAR 9.407-2(c). Given that these are the only grounds the Government is basing the suspension, determining what the valuable military technology has been allegedly misappropriated becomes all the more critical to Plaintiffs case.

Here, however, the Government at no point adequately described what aspects of the ONE SHOT program or Clear Shot Disclosure were at issue. Instead, the SDO relied exclusively on a single conclusory statement to describe the similarities and/or alleged infringement by the Patents on DARPA intellectual property:

> DARPA's review of these patents further indicates that they each disclose the Clear Shot invention and cover the ONE SHOT system that was developed entirely with U.S. Government resources.

*Id.* This statement cannot possibly put the Plaintiffs on notice as to what or how DARPA believes the Patents have infringed on its intellectual property in the ONE SHOT / Clear Shot Disclosure. As mentioned above, it is undisputed that DARPA does not have an ownership interest in the entire field of laser wind measurement technology as the basis for the wind measurement concepts and associated mathematical formulae has been published in papers for decades.

Despite this undisputed point, that is exactly the position DARPA appears to have taken in this matter. Remarkably, there is not a *single* stated comparison between the information stated in the Patents and DARPA's alleged intellectual property. In fact, in the Suspension

Notice, there is not even a single quote *any* of the fifty-four (54) claims Patents of the three

patents.  DARPA did not even include the Patents when it provided the July 2019 Record that

"formed the basis" for the SDO's decision to the Plaintiffs. *See* AR 8.  Likewise, DARPA did not

include anything in the July 2019 Record that identified any specific aspects of DARPA's

intellectual property in the ONE SHOT Program or Clear Shot Disclosure.  As a result, even if

the Patents had been included, there was nothing to compare the Patents against. Vagueness of

this degree simply cannot comply with due process.

### B.  Failure to provide the record for the SDO's decision violates Due Process

Due process requires, *inter alia,* advance notice of "the issues on which the decision will

turn and to be apprised of the factual material on which an agency relies so that [the party] may

rebut it." *Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.,* 419 U.S. 281, 288 n. 4, 95

S.Ct. 438, 443 n. 4, 42 L.Ed.2d 447 (1974).  Fundamentally, "[a]dequate notice of the charges is,

of course, part of the process that is due to the suspended contractor."  *ATL*, 736 F.2d at 683.

The notice must be "sufficiently specific to permit the suspended contractor to collect and

present relevant evidence refuting the charges contained therein.")  *Id.*

Here, the Government notice failed to adequately describe the issues on which the

suspension turned and, as important, failed to provide the factual material on which the SDO

relied upon to make his suspension decision.  DARPA withheld key documents that were plainly

central to the SDO's decision to suspend Plaintiffs. AR 332 - 427. Worse yet, the Government

now has sought to leverage the withheld documents in an effort to justify the SDO's decision –

even though those documents are generally inappropriate for an APA review.  *Camp v. Pitts,* 411

U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973) ("In applying [the arbitrary and capricious]

standard, the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court."). This is not due process.

Plaintiffs never had *any notice* that documents other than the July 2019 Record were reviewed and relied upon by the SDO. *See ATL, Inc. v. United States*, 736 F.2d 677, 685 (Fed. Cir. 1984) ("we are struck, as no doubt was the trial judge, by the Navy's secretive attitude here.").  As a result, Plaintiffs were not afforded an opportunity to "rebut" the documents it was unaware had even been considered by the SDO.  Obtaining a full record in this case was especially critical given the SDO's extraordinary vague notice and subsequent refusal to meet with Plaintiffs so that Plaintiffs could address the SDO's factual and legal misunderstandings.

III.     **Dr. Varshneya's Patents Cannot Form a Legal Valid Basis for the Suspension.**

 The '911 Patent and its CIPs differ significantly from both ONE SHOT Program and the Clear Shot Disclosure.  And even if those differences in the technologies did not exist, , long standing statutory authorities and related implementing regulations require the Government to allow Government employees to pursue inventions, even when made in the scope of employment, if the Government does not take affirmative actions related to the inventions.  15 U.S.C. § 3710d states:

> If a Federal agency which has ownership of or the right of ownership to an **invention** made by a Federal employee does not intend to file for a patent application or otherwise to promote commercialization of such invention, the agency **shall** allow the inventor, if the inventor is a Government employee or former employee who made the invention during the course of employment with the Government, to obtain or **retain title to the invention** (subject to reservation by the Government, to a nonexclusive, nontransferable, irrevocable, paid-up license to practice the invention or have the invention practice throughout the world by or on behalf of the Government).

Relatedly, in carrying out this statutory directive, 37 C.F.R. 501.6(2), states:

> [I]n any case where the Government has **insufficient interest** in an invention to obtain the entire right, title and interest therein (although the Government could obtain same under paragraph (a)(1) of this section), the Government agency concerned **shall** leave title to such invention in the employee, subject however, to

31

the reservation to the Government of a nonexclusive, irrevocable, royalty-free license in the invention with power to grant licenses for all governmental purposes. Reference is made to section 15 of the Federal Technology Transfer Act of 1986 (15 U.S.C 3710d) which **requires** a Government agency to allow the inventor to retain title to any covered invention when the agency does not intent to file a patent application or otherwise promote commercialization. (emphasis added)

With respect to the Clear Shot Disclosure, it has now been **more than seven years** since the disclosure was made to DARPA (November 2012); however, the Government has apparently taken no steps whatsoever to pursue a patent or otherwise commercialize the contents of the disclosure. 15 U.S.C. § 3710d ("The agency *shall allow the inventor*…to obtain or *retain title to the invention*") (emphasis added); 37 C.F.R. 501.6(2).

Assuming for the sake of argument DARPA's best case, that the '911 Patent is the same as the ONE SHOT system or the Clear Shot Disclosure – which Dr. Varshneya disputes, he still could not have misappropriated the intellectual property related to those systems. Pursuant to 15 U.S.C. § 3710d and 37 C.F.R. 501.6(2), the Government was required to let Dr. Varshneya obtain or "**retain title**" to his invention because the Government had demonstrated statutory insufficient interest in the invention by choosing to not pursue a patent or commercialization.[18]

Furthermore, both 15 U.S.C. § 3710d and 37 C.F.R. 501.6(2), grant the Government an automatic right to use inventions that the Government did not pursue itself. 15 U.S.C. § 3710d ("subject to reservation by the Government, to a nonexclusive, nontransferable, irrevocable, paid-up license to practice the invention or have the invention practice throughout the world by or on behalf of the Government"). The Government cannot now reasonably claim it has been harmed, even assuming that its allegation that the patents include ONE SHOT or Clear Shot Disclosure, because it would have always had a right to use the patented intellectual property for

---

[18] Of course, if the ONE SHOT and Clear Shot systems are not the same as patented by Dr. Varshneya, which Plaintiffs respectfully argue, then the suspension assertion of misappropriation is also is factually baseless.

Government purposes.  Still further, there is no allegation in the Suspension Notice or elsewhere that the Government has been hindered from pursuing patent protection for itself over the past seven years.

IV.    **The Suspension Notice Does Not Properly Allege or Factually Support that Immediate Action is Necessary to Protect the Government's Interests.**

The SDO can only suspend a party when he or she has affirmatively and properly determined that "immediate action is necessary to protect the Government's interests." FAR § 9.407-1. Federal courts have long recognized that a suspension based on years old information is inherently incompatible with the requirement that "immediate action" be necessary to protect the Government interest.  This point is emphasized in *Lion Raisins, Inc. v. US,* 51 Fed. Cl. 238, 247 (2001) as follows:

> **Even assuming plaintiffs alleged conduct evidences "a lack of integrity or business honesty" so as to justify suspension, the court holds that Dr. Clayton abused his discretion when he determined that evidence of plaintiffs lack of integrity in April 1998, which was known to the agency as of May 1999, "seriously and directly" affected plaintiffs "present responsibility" as a Government contractor in February of 2001.**  (emphasis added).

Likewise, in *Inchcape Shipping Servs. Holdings Ltd. v. United States*, No. 13-953 C, 2014 WL 12838793, at \*2 (Fed. Cl. Jan. 2, 2014), the court granted a preliminary injunction against a Government's suspension of a contractor.  In reaching this decision, the court stated:

> Assuming, *arguendo*, that the government was barred from using the information before the court order was entered, it **waited more than a year to suspend Inchcape**. **This delay casts serious doubt on the government's claim that immediate action was necessary**.

*Id.*  (emphasis added).  These cases are premised on the FAR 9.407-1 immediate action requirement. These cases make clear that, a suspension can neither be considered an immediate action nor a necessary action if the Government has been aware of the facts and circumstances

for an extended period of time (more than a year).  Indeed, by definition, in this case the Government was aware of the alleged facts for more than 3 years but did not suspend the contractor, therefore no immediate action was necessary to protect the Government interests.

      A.  <u>DARPA Knowledge of Alleged Appropriation of Intellectual Property</u>

      DARPA officials have long been aware of Dr. Varshneya's intent to pursue a simplified and cost effective commercial targeting device that would, among other things, allow a hunter to account for crosswinds.  Indeed as discussed above,  at Dr. Varshneya's farewell from DARPA on April 30 2014, Dr. Walker, the SDO who issued the suspension, specifically wished Dr. Varshneya well and asked him to "let him how this commercial venture [related to the wind measuring laser targeting system] works out for him."  AR 80.

      Almost two years later, on March 22 and 23, 2016, Dr. Varshneya contacted Mr. Lopes, DARPA's General Counsel, via email, and specifically identified the patents by number and described their purpose/functions.  *Id.*  In response, Mr. Lopes thanked Dr. Varshneya and said "Perhaps you can come back to DARPA.  Your One Shot program was remarkable." *Id.* Yet less than two months later, on May 17, 2016, DARPA attempted to reassign  the '911 and '701 patents to the Government, without the knowledge or permission of their rightful patent owner, Dr. Varshneya.  Thereafter, Dr. Varshneya discovered DARPA's unauthorized assignment and corrected the public record in 2016 – nearly three years *before* DARPA suspended Plaintiffs.

      As DARPA's actions have proven, DARPA has had actual and detailed knowledge of Dr. Varshneya's efforts to develop and patent an alternative system for many years. Consequently, DARPA's long term knowledge of these activities plainly undercuts its position that *immediate* action is necessary to protect the Government's interest. *See Inchcape Shipping Servs. Holdings Ltd.*, No. 13-953 C, 2014 WL 12838793, at *2 ("[one year] casts serious doubt on the

government's claim that immediate action was necessary"); *cf. Sloan v. HUD,* 231 F.3d 10, 17 (D.C.Cir.2000) ("There must be a *real need for immediate action to protect the public interest* in order to justify a suspension." (emphasis in original)). Moreover, the Suspension Notice completely fails to even allege how or why the alleged misappropriation necessitates immediate action to protect the Government interests. There is no allegation that DARPA has lost the ability to monetize the allegedly misappropriated intellectual property. *See Inchcape*, No. 13-953 C, 2014 WL 12838793, at *2 (court questioning agency late agency suspension when "[t]here is no explanation in the record as to why this matter became an emergency…"). In sum, the Suspension Notice is fatally flawed based on its failure to identify *any facts whatsoever,* much less conclude based upon adequate evidence, it was necessary for the government to take immediate action to protect its interests because of alleged misappropriations.

### B.  Dr. Varshneya's Alleged Misstatements to USPTO

The Suspension Notice also alleges that the suspension is based on "[Dr. Varshneya's] alleged false statements to the U.S. Government, namely to USPTO, in violation of 18 U.S.C. 1001." The alleged false statements to the USPTO are listed on page three of the Suspension Notice. AR 3. DARPA argues that the patents and the two systems are the same, yet this argument is not been supported by fact and has never been established. There can be no perjury if the patents and systems are not the same. The two statements, filed August 9 and 31, 2016, are worded identically, with both discussing both patents. Each of these Declarations were known to the Government as soon as they were filed with the USPTO to correct the public record. In fact, the Declarations were directly in response to DARPA's unilateral assignment of the '911 and '701 patents to the Government. As a result, the Government was aware of these statements for

nearly three years and yet it was only in July 2019 that DARPA asserted that the Declarations demanded immediate action to protect the Government's interests.

As addressed above, because a suspension is only proper where "immediate" action is necessary to protect the Government's interests, a suspension in response to a three-year-old public declaration cannot reasonably be considered "immediate" or "necessary." *See Inchcape Shipping Servs. Holdings Ltd*, No. 13-953 C, 2014 WL 12838793, at *2 ("This delay casts serious doubt on the government's claim that immediate action was necessary"); *Lion Raisins, Inc.*, 51 Fed. Cl. 238, 247 (2001). Moreover, the Suspension Notice is devoid of any determination regarding how these alleged false statements in the Declarations harmed the Government's interest or impacted Plaintiffs' present responsibility. Further, the Government has not alleged or determined that the alleged misstatements have in any way hindered or prevented the Government from furthering its work or obtaining its own patent for its systems.

<u>Government Response</u>

As addressed above, the Suspension Notice does not articulate a basis or *even allege* that "immediate action is necessary to protect the Government interests," which is the fundamental requirement for any suspension action under FAR 9.407-3. In response to this argument, the Government argues there is no need to expressly state that immediate action is necessary to protect the government interest. In support of this argument, the Government relies on *Coleman Am. Moving Servs., Inc. v. Weinberger*, 716 F. Supp. 1405, 1412 (M.D. Ala. 1989). The Government's argument misses the point and relies on a plainly inapposite case.

First, the suspension in the *Coleman* case was *after* the contractor had been indicted for alleged antitrust violations. *Id.* In this case, there has not been an indictment, more importantly, it has been more than five years since the first of the Patents were issued and nearly three years

since Dr. Varshneya's Declarations.   As a result, it is nonsensical to suggest that the SDO can ignore the fact that DARPA accepted the status quo for years, but is taking drastic action because immediate action is necessary to protect its interests.  Stated otherwise, under the unique facts of this case (DARPA's knowledge of the Patents and the Declarations), in order for the SDO's decision to be rationally based (not arbitrary or capricious) the SDO cannot completely ignore the obvious change in circumstance regarding why the Government will now experience immediate harm (when it has not for many years).  *See Inchcape*, No. 13-953 C, 2014 WL 12838793, at *2 (court questioning agency late agency suspension when "[t]here is no explanation in the record as to why this matter became an emergency…").  This is especially true in view of the fact that the July 2019 Record provided to Plaintiff did not contain a single document from after 2016.

In fact, in an effort to salvage the suspensions from this fatal defect, the Government seeks to rely on the "full administrative record" that was not provided to Plaintiffs with the July 2019 Record.  Plaintiffs were not aware of or permitted to review these "new" documents in preparing their opposition and, as a result, the court should not consider them now.  *Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973) ("In applying [the arbitrary and capricious] standard, the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.").

Even with these new documents, however, it does not cure the Suspension Notices fatal defect in failing to articulate a basis for why immediate action was necessary to protect the Government's interest. *Coleman Am.*, 716 F. Supp. at 1412. At best, these new documents highlight that there is a potential civil dispute regarding the ownership of intellectual property. Neither the new documents nor the documents that comprise the July 2019 Record, indicate that

the Government's procurement system was in any way threatened by Plaintiffs' Patents or the

related Declarations.  AR 332 - 427.

V.      **The Decision has Arbitrarily and Capriciously Varied Over Time.**

In the Suspension Notice, DARPA specified the grounds of the suspension, stating that

the Plaintiffs were being suspended based on the SDO's determination that there was "adequate

evidence" that Plaintiffs had violated 18 U.S.C. §§ 641 [misappropriation] and 1001 [false

swearing].  AR 1.  In Mr. Nuckols' letter to Plaintiffs' counsel dated December 16, 2019 (AR

185), the Government suddenly changed the basis for the suspension from "adequate evidence"

of specified crimes to the fact that the Plaintiffs were under investigation, stating as follows:

> Specifically, **the suspension is due to the ongoing investigation** by the U.S.
> Department of Justice (DOJ), the U.S. Attorney's Office for the Eastern District of
> Virginia (USAO), and the Defense Criminal Investigative Service (DCIS) into the
> actions of Dr. Varshneya and XeroWind.

The "actions of Dr. Varshneya and XeroWind" are not adequately described.

Additionally, Plaintiffs were not afforded an opportunity to submit matters in opposition to this

new alleged basis for the Suspension.  As a result, Plaintiffs have suffered and are suffering

actual harm from the Government's arbitrary and capricious changes of the basis for the

suspension.  The Plaintiffs have been denied their Constitutional Due Process and related rights

under the FAR to know the charges levied against them in sufficient detail to enable them to

prepare and present a defense to those allegations.

VI.     **Other Arbitrary and Capricious actions by the Government**

A.  Inconsistent findings of present responsibility

The Government also acted arbitrary and capriciously by failing to even alleged new

facts in support of its suspension decision to reconciled the fact that XeroWind had been deemed

presently responsible when it was awarded the two Army Contracts on August 8, 2016, and June

9, 2017.  AR 90.  *See Lion Raisins, Inc. v. United States*, 51 Fed. Cl. 238, 249 (2001), (finding

that the Government acted arbitrarily by deeming plaintiff both responsible (when a contract was

awarded to it) and "non-responsible for the same time period and based on the same evidence").

   B. <u>Suspension is an improper punitive action</u>

  The Government violated FAR 9.402 by using suspension as a punitive measure against

the Plaintiffs. *See* FAR 9.402 (Suspension is "not for purposes of punishment.").  The

Government has been aware of the underlying facts for the suspension since at least 2016 – when

it sought to unilaterally assign the Patents to itself. AR 100; AR 102-103; AR 75-76; *see Lion*

*Raisins, Inc. v. United States,* 51 Fed. Cl. 238, 247 (2001) (agency suspension deemed

arbitrary and capricious, and imposed as punishment, where the agency possessed all the

evidence in 1999 that it used to suspend contractor in 2001**).**  As a result, the Government

was not seeking to protect its interest from immediate harm, but instead using the

suspension as a punitive measure related to a dispute regarding the ownership of the Patents.

AR 102-103.  Indeed, nothing in the Suspension Notice or the July 2019 Record in indicates

the suspension action was intended to bar Plaintiffs from an upcoming procurement.

   C. <u>The Administrative Record Fails to Include any Subject Matter Expertise</u>

  Neither the July 2019 Record nor the recently disclosed new documents in the

administrative record, contain any indication or factual support that the SDO possessed the

technical and legal expertise to evaluate the laser wind measurement devices at issue and apply

them to a legal interpretation of the patents.  Furthermore, no document in the administrative

record indicates any third party subject matter expert was consultant to advise the SDO as to

these highly technical and legal questions related to the Government's allegations and Plaintiffs'

Opposition.  *See  Tripoli Rocketry Ass'n, Inc. v. Bureau of ATF,* 437 F.3d 75, 77 (D.C.Cir.2006)

(explaining that "no deference" is owed an agency's "purported expertise" where its explanation "lacks any coherence").  As a result, because the SDO did not rely on required technical and legal expertise, the decision to suspend is both arbitrary and capricious.

### D.  Violation of FAR 9.407-4 by issuing an improperly long suspension

In its October 25, 2019, letter DARPA arbitrarily changed the term of the suspension from "12 months" to whenever the "investigations" are completed.  AR 181. FAR 9.407-4 expressly states that a suspension period may not exceed 18 months if no legal proceedings have been initiated by the Government against the Contractor in that period. DARPA's October 25th letter does not state that the term of the suspension is limited by the express 18 month limitation under FAR 9.407-4 and, as a result, the suspension period is improper.

### CONCLUSION

DARPA has neither followed its own rules nor provided fundamental due process in suspending Plaintiffs.  It secretly withheld documents.  It refused to provide basic details supporting its bald allegations.  The SDO  refused to  speak with the Plaintiffs so that the Plaintiffs could explain, through information and argument, why DARPA was mistaken about the facts and the law in this case.  Each of these actions and the other legal defects discussed above violated express regulations, due process of law, and were otherwise arbitrary and capricious.  The SDO decided to suspend; however, he apparently did not want to explain why, provide the documents he relied upon in doing so, or to meet with the Plaintiffs to hear any explanation for why his decision might be wrong. The Court must not permit these suspensions to continue any longer. Plaintiffs respectfully request that the Court grant their Motion for Summary Judgment and deny the Government Motion to Dismiss and Motion for Summary Judgment.

Respectfully submitted,

**DR. DEEPAK VARSHNEYA**
**XEROWIND, LLC**
By counsel:

Ian A. Cronogue, Esq. (Va. Bar: 83783)
Gerald H. Werfel. Esq. (Va. Bar: 16084)
**BAKER, CRONOGUE, TOLLE & WERFEL, PLC**
1320 Old Chain Bridge Road, Suite 200
McLean, Virginia 22101
Telephone: 703.448.1810
Facsimile: 703.448.3336
iancronogue@bctwlaw.com
ghwerfel@bctwlaw.com
*Attorneys for Plaintiffs*


## CERTIFICATE OF ELECTRONIC FILING/SERVICE

I HEREBY CERTIFY THAT on June 23, 2020, I filed the foregoing Motion and Opposition with the Clerk of the Court using the CM/ECF system which will send a Notice of Electronic Filing to all counsel of record, including:


Krista M. Anderson
US Attorney's Office (Alexandria-VA)
2100 Jamieson Avenue
Alexandria, VA 22314
703-299-3700
Email: krista.anderson@usdoj.gov


Ian A. Cronogue, Esq.

41